**JUDGE KATHLEEN CARDONE**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| YAZMIN GONZALEZ, | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § **EP23CV0266** |
| | § |
| MILBERG COLEMAN BRYSON PHILLIPS | § |
| GROSSMAN PLLC, a Tennessee Professional | § |
| Limited Liability Company | § |
| | § |
| Defendant. | § |

## COMPLAINT

Pro Se Plaintiff Yazmin Gonzalez files this Complaint against Defendant Milberg Coleman Bryson Phillips Grossman LLC for violations of (1) the federal Telephone Consumer Protection Act ("TCPA") and its regulations and (2) the Texas Business and Commerce Code ("TBCC") law governing telephone solicitation, alleging as follows:

### INTRODUCTION

1. Beginning in May 2023, Plaintiff began to receive a barrage of illegal telemarketing calls made on behalf of Defendant Milberg Coleman Bryson Phillips Grossman PLLC ("Milberg") by an unknown anonymous telemarketer soliciting Camp Lejeune legal representation.

2. Plaintiff seeks redress under the TCPA and TBCC, demanding that the calls stop.

### JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over Counts I, and II under 28 U.S.C § 1331, because the claims arise under the federal Telephone Consumer Protection Act, 47 U.S.C. § 227.

1

*See Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 386-87 (2012) (holding that federal courts have federal question jurisdiction over private actions brought under the TCPA).

4. The Court has supplemental jurisdiction over Counts III under 28 U.S.C § 1367.

5. This Court has personal jurisdiction over Milberg because Defendant purposefully availed itself to the State of Texas and to this District, and there is a sufficient relationship between Defendant's purposeful contacts with Texas and the litigation:

   a) Defendant targets Texas when marketing their legal services and regularly conducts business in this District, including telephone solicitation.

   b) Its agent John Doe Telemarketer, called Plaintiff's El Paso-area phone number (with area code 915) to generate leads for Milberg's legal services.

   c) These calls to Texas Plaintiff injured Plaintiff in Texas, creating a causal link among Defendant, the forum, and the litigation that exceeds the non-causal affiliation that is sufficient to support personal specific jurisdiction. *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

   d) Venue is proper under 28 U.S.C. § 1391(b)(2).

## PARTIES AND OTHER ENTITIES

6. Plaintiff YAZMIN GONZALEZ is a natural person domiciled in Texas who received the incessant and intrusive calls made on behalf of Defendant soliciting their legal services.

7. Defendant MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN PLLC ("Milberg") is a professional limited liability company law firm organized and existing under the laws of Tennessee and can be served via registered agent Gregory M. Coleman at 800 S. Gay Street, Suite 1100, Knoxville, Tennessee 37929.

8. Non-named Party JOHN DOE is an unknown anonymous telemarketer that made phone calls on behalf of and at the direction of Milberg in exchange for financial considerations.

## FACTUAL ALLEGATIONS

9. The TCPA was enacted to protect consumers' privacy interests by prohibiting unwanted, repetitive, and invasive telephone solicitations.

10. Plaintiff successfully registered her phone number ending in -1859 on the National Do-Not-Call Registry ("DNC") in March 2022.

11. Milberg is a law firm that markets itself as "Leading efforts to get justice for water contamination victims at Camp Lejeune."

12. Milberg hired anonymous John Doe telemarketer(s) to place telephone solicitation phone calls because Milberg is barred by ethics from directly placing unsolicited phone calls to consumers with whom no prior relationship exists.

13. On May 25, 2023, Plaintiff searched the Texas Secretary of State website at https://direct.sos.state.tx.us/telephone/telephonesearch.asp and did not find a valid Texas telephone solicitation registration for Defendant Milberg.

14. Plaintiff is the subscriber to a cellular telephone service for this phone number, uses the phone for residential purposes, and does not use the telephone for any business purposes.

15. On or about May 5, 2023, Plaintiff began receiving such calls from Defendant to her El Paso-area cellular telephone number 915-XXX-1859.

16. Defendant used a series of phone numbers to call Plaintiff. Many of the phone numbers used 915 area codes in order to make it seem as though the call was local. This spoofed caller identification is a purposeful violation of the Truth in Caller ID Act of 2009.

17. Plaintiff answered call #1, the telemarketer was soliciting for Camp Lejeune representation. Plaintiff informed the telemarketer she was not interested and disconnected the call. Call #2 was similar to the first call, Plaintiff disconnected the call.

18. On May 16, 2023, Plaintiff answered call #3 the telemarketer was soliciting for camp Lejeune water contamination settlement. The telemarketer asked Plaintiff qualifying questions and then transferred the call to an agent who identified herself as ("Ally Brown") Ally.

19. Ally asked more qualifying questions, after Plaintiff answered all the qualifying questions Ally informed Plaintiff she was going to send her some documents via text message and email.

20. Plaintiff received the message from phone number 469-769-5878 stating the following:

> "Here is the link to sign your documents from Milberg Coleman Bryson Phillips Grossman"

21. Plaintiff was still on the phone call from paragraph 18 when she clicked on the link and it took her to a retainer from Defendant Milberg. Plaintiff informed Ally she was going to review the retainer and disconnected the call.

22. Plaintiff also received the email from intakes@mylegal.cc with the subject saying "Milberg Johnson Camp Lejeune." The email stated the following:

> "In order to have your case be reviewed by counsel at Milberg Coleman Bryson Phillips Grossman, we just need you to electronically sign some documents…Please click on sign now… Please let us know if you have any questions by calling us at 423-922-9487"

23. Plaintiff clicked on the "sign now" and it took her to a retainer from Defendant Milberg, which, Plaintiff did not sign.

4

24. On May 16, 2023, at 3:46 Plaintiff received call #5. Plaintiff answered the call, and it was a telemarketer soliciting for Camp Lejeune water contamination settlement. Plaintiff continued with the call because the telemarketer did not properly identify himself or the company he was calling on behalf of.

25. Call #5 was similar to call #3 described in paragraphs #18-19. The Telemarketer transferred to an agent named "Alex" she asked qualifying questions and it turned out to be Defendant Milberg.

26. On May 17, 2023, Plaintiff received call #6. It was agent Alex asking Plaintiff to sign the contract. Plaintiff informed Alex she was not interested, to stop calling, and disconnected the call.

27. On May 18, 2023, Plaintiff received call # 7 which was agent Ally. Plaintiff informed Ally she was not interested and informed Ally Plaintiff had already made a do not call request.

28. On May 19, 2023, Plaintiff received a text message from phone number 904-655-2101, the text message stated the following:

"Hello Ms. Gonzalez, this is Michael from Milberg law firm..."

29. On May 22, 2023, Plaintiff received call #9 from an individual who identified himself as "John calling on behalf of Milberg Law." Plaintiff asked John to please remove her from the list and also informed John that she had already made multiple do not call requests. John informed Plaintiff he would remove her from the list.

30. Surprisingly on May 24, 2023, Plaintiff received an automated text message exactly like the one described in paragraph #20. Plaintiff replied, "Stop."

5

31. Plaintiff received at least 7 telephone calls and 1 automated text message on behalf of, and by, Defendant Milberg from a number of various phone numbers. Table A below lists the phone calls received by Plaintiff.

32. TABLE A below displays calls for phone number ending in -1859 made to Plaintiff

TABLE A:

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1. | 05/05/2023 | 9:26 AM | 915-821-1877 | Telemarketer soliciting |
| 2. | 05/13/2023 | 3:24 PM | 915-821-1887 | Telemarketer soliciting |
| 3. | 05/16/2023 | 9:59 AM | 915-821-1896 | Telemarketer soliciting, life transfer to Ally who sent retainer. |
| 4. | 05/16/2023 | 10:32 AM | 469-769-5848 | Text with retainer |
| 5. | 05/16/2023 | 3:46 PM | 915-587-4176 | Telemarketer soliciting, life transferred to Alex who sent retainer. |
| 6. | 05/17/2023 | 3:06 PM | 615-667-9272 | Telemarketer Alex DNC request |
| 7. | 05/18/2023 | 2:20 PM | 423-922-9487 | Call from Ally DNC request |
| 8. | 05/19/2023 | 6:47 PM | 904-655-2101 | Text from Michael from Milberg |
| 9. | 05/22/2023 | 2:07 PM | 423-922-9487 | Call from John from Milberg |
| 10. | 05/24/2023 | 10:44 am | 469-769-5848 | Automated text |

33. Plaintiff did not have an established business relationship with Defendant, nor did Plaintiff consent to any of these calls.

34. Plaintiff did not provide her phone number to Defendant at any point.

35. Defendant's placement of multiple calls within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC Registry since March 2022, violated 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c).

36. Defendant's violations described in paragraphs 17-32 were knowing and willful because MILBERG had "reason to know, or should have known, that [its] conduct would violate the statute." *Texas v. Am. Blastfax, Inc.*, 164 F. Supp. 2d 892, 899 (W.D. Tex. 2001). Bad faith is not required.

37. MILBERG knew or should have known that its conduct would violate the TCPA and its regulations because MILBERG operates in a highly regulated telephone solicitation industry.

38. MILBERG knew or should have known the requirements for making TCPA-compliant telemarketing calls and thus knew or should have known that the calls complained of herein violate the TCPA and its regulations.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE CALLS

39. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

40. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

41. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

42. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

## VICARIOUS LIABILITY OF MILBERG FOR JOHN DOE'S TCPA VIOLATIONS

43. Milberg is "vicariously liable" under federal common law principles of agency for TCPA violations committed by third-party telemarketers," such as John Doe. In re Joint Pet. filed by Dish Network, LLC, 28 F.C.C.R. 6574, 6582 (2013).

44. Milberg markets legal representation through direct telephone solicitation by its hired John Doe telemarketers, who act on its behalf. John Doe transfers live, hot leads to Milberg and Milberg accepts the leads. John Doe was Milberg's agent when it made the prohibited calls on behalf of and with the actual authority from, John Doe pursuant to a contract that governs John Doe's telemarketing for Milberg.

45. Milberg directs, controls, authorizes, and pays John Doe to generate live-transfer leads for Defendant's legal services through telephone solicitation. Moreover, it requires, authorizes, or at least permits John Doe telemarketers to solicit explicitly for Camp Lejeune representation.

46. Milberg sets the criteria for qualifying leads, which John Doe must follow, and John Doe live-transfers leads qualified on those criteria exclusively to Milberg. Plaintiff is unaware of the qualifying thresholds, but the salient question is whether the potential client was stationed at Camp Lejeune, when they were stationed at Camp Lejeune, and whether there was some type of cancer or physical impairment that manifested as a result of the Camp Lejeune stay.

47. On information and belief, Milberg writes or at least approves the call script John Doe telemarketers use when qualifying leads for Milberg.

48. John Doe telemarketers are Milberg's associates and do nothing to disturb the impression that John Doe telemarketers work for, and speak and act on behalf of, Milberg.

49. From John Doe telemarketer's initial call through Defendant Milberg's acceptance of a completed representation application, the telemarketing of Milberg's legal representation constitutes a singular, coordinated marketing effort devised, authorized, directed, and controlled by Milberg, the principal, with John Doe acting as Milberg's agent.

50. John Doe, acting with actual authority, made the prohibited calls, qualified Plaintiff according to Milberg's criteria, and then live-transferred Plaintiff to Milberg's advisor to continue marketing legal representation.

## COUNT I:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent

51. Plaintiff incorporates the preceding paragraphs 1-82 as if fully set forth herein.

52. Defendant Milberg, and/or their agents placed one (1) automated text messages to Plaintiff's cellular telephone.

53. Plaintiff never consented to receive automated text messages from Defendant Milberg. Plaintiff has had no relationship with Defendant Milberg.

54. Defendant Milberg automated text message were made for purposes of advertising and marketing their goods and services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

55. The automated text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

56. As a result of their unlawful conduct, Defendant Milberg repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendant Milberg to stop their unlawful text message campaigns.

57. Not only did Defendant Milberg make these violating automated text messages, but Defendant and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

58. If the Court finds that Defendant Milberg willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT II: – DNC Violations
### Violation of the TCPA, 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)

59. Plaintiff incorporates by reference each and every paragraph of this complaint as if fully set forth herein.

60. The TCPA prohibits telephone solicitation of residential telephone subscribers whose numbers are registered on the National Do-Not-Call Registry, 47 U.S.C. § 227(c)(5).

61. Even though Plaintiffs number has been registered on the National DNC Registry since March 2022, MILBERG made unsolicited telephone solicitations to Plaintiff's residential telephone line, without Plaintiff's consent, and thereby violated 47 U.S.C § 227(c) and 47 C.F.R. § 64.1200(c) (the "DNC Violations").

62. Plaintiff suffered the following injuries from each and every Violation: invasion of privacy; intrusion on Plaintiff's right of seclusion; occupation of Plaintiff's telephone line by unwelcome calls, rendering the phone unavailable for legitimate calls; inconvenience; loss of usefulness of Plaintiff's phone; unnecessary expenditure of Plaintiff's phone's battery power; degradation of the battery; and trespass to Plaintiff's chattel, namely her cellular telephone.

63. Under § 227(c)(5), Plaintiff is entitled to receive up to $500 in damages for each violation of 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(c). Because the violations were knowing and willful, *see* Paragraphs 31-33, the Court may award up to $1500 per violation.

64. Accordingly, Plaintiff seeks and order under Section 227(c)(5) awarding $1500 for each DNC Violation.

## COUNT III:

## Violation of Tex. Bus. Org & Com. Code § 302.101

65. Plaintiff incorporates by reference each and every paragraph of this Complaint as if fully set forth herein.

66. In addition to the harm of illegal telephone solicitations, Texas law recognizes the difficulty of holding businesses that make them accountable.

67. To address that problem, Texas law requires "sellers" engaged in telemarketing to register with the state and provide the public the information necessary to hold a seller accountable: the seller's legal name, any assumed names, any organizational documents, the address for the principal place of business, each phone number used in telemarketing, names of officers and directors, and the name and address of the agent for service of process. Tex. Bus. & Com. Code § 302.001. *et. seq.*

68. The registration requirements reflect an important public policy of Texas: to "protect persons against false, misleading, or deceptive trade practices in the telephone solicitation business." *Id.* § 302.003. The law must be "liberally construed and applied to promote [that] purpose." *Id.* Moreover, sellers must post financial security to ensure their compliance, and an "attempted waiver of a provision of this chapter is void." *Id.* §§ 302.004, 302.107.

69. Chapter 302 defines a "seller" as a "person who makes a telephone solicitation on the person's own behalf." Id. § 302.001(5), A "telephone solicitation" is "a telephone call a seller or salesperson initiates to induce a person to purchase, rent, claim, or receive an item." *Id.* § 302.001(7). "Item," in turn, means "property or a service." *Id.* § 302.001(1). Legal services through law firms are a service." *Id.* § 302.001(1).

70. MILBERG is a "seller" because it makes telephone solicitations on its own behalf through salespersons, including both (a) those it "employ[s]" – such as "Ally" and "Alex," and

11

those it 'authorize[s] – such as third party telemarketers. Id. § 302.001(4)-(5). The "items" it induces purchasers to receive are loans and a rapid close. And the called parties are "purchasers" because they are "solicited to become…obligated for [the loans].' Id. § 302.001(3).

71. MILBERG engages in "telephone solicitation" because they initiate telephone calls to induce consumers to enroll in their legal services Id. § 302.001(1), (3), (7).

72. Because "a person makes a telephone solicitation if the person effects at attempts to effect a telephone solicitation," telephone calls initiated by "Ally" and "Alex" are attributable both to them individually and to MILBERG. *See Id.* § 302 (emphasis added).

73. Texas law requires those whose products or services are offered through telephone solicitation from or to a location located in Texas to provide information about their telemarketing activities and obtain a registration certificate from the State. Tex. Bus. & Com. Code § 302.101. The purpose of the requirement is to "protect persons against false, misleading, or deceptive practices in the telephone solicitation business." *Id.* at 302.003. MILBERG effected the solicitations because it brought about and made them happen by employing or authorizing these salespersons to make the telephone solicitations and paying them to do so. *See* Effect, Black's Law Dictionary (11th ed. 2019) ("To bring about; to make happen.").

74. Because the telephone solicitations were made to Plaintiff, a "purchaser located in this state" of Texas, MILBERG was obligated to comply with the registration and related requirements of Texas Business & Commerce Code § 302.001, *et seq.*

75. Defendant failed to comply, committing numerous independent violations of Texas law, including at least the following:

    a) Failure to obtain a certificate of registration for the business locations(s) from which each of the telephone solicitations was made;

b) Failure to post the registration certificate in a conspicuous place at each such location;

c) Failure to post in close proximity to the registration certificate the name of each individual in charge of the location;

d) Failure to file an addenda providing the required registration information for each salesperson;

e) Failure to make available at each location a copy of the entire registration statement and any addenda for inspection by a purchaser or by a representative of a government agency; and

f) Failure to post a $10,000 bond, letter of credit, or certificate of deposit to secure Defendant's compliance with Chapter 302.

g) Failure to appoint Texas' Secretary of State agent for service of process.

h) Failure to provide the complete street address of both (i) the location from which each solicitation was made and (ii) Defendant's principal location.

76. Each solicitation is a separate violation for which MILBERG is subject to a penalty up to $5,000. *Id.* § 302.101, 302.302(a).

77. Defendant's violations of Chapter 302 harmed Plaintiff because she had to spend hours tracking down information that should have been publicly available. To this day, Plaintiff does not have sufficient information about MILBERG, the locations from which the calls were made, and the persons responsible for them.

78. Plaintiff seeks to recover from Defendant "a civil penalty of not more than $5,000 *for each violation*."

79.     Plaintiff is further "entitled to recover all reasonable costs prosecuting this action, including court costs and investigation costs, deposition expenses, witness fees, and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for the following relief:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendant violate the TCPA and Texas state law;

C.      An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.      An award of $1500 per call in statutory damages arising from the TCPA § 227(b) intentional violations jointly and severally against the corporation for 1 automated text message;

E.      An award of $1500 per call in statutory damages arising from the TCPA § 227(c) intentional violations jointly and severally against the corporation for 7 calls;

F.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101;

G.      An award to Ms. Gonzalez of damages, as allowed by law under the TCPA;

H.      An award to Ms. Gonzalez of interest, costs and attorneys' fees, as allowed by law and equity;

I. Such further relief as the Court deems necessary, just, and proper.


Dated: July 14, 2023,                                              Respectfully submitted,

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859

## I.     Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: July 14, 2023,

Yazmin Gonzalez
Plaintiff, Pro Se
14205 Charles Pollock
El Paso, TX 79938
915-820-1859